**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ISAAC KELVIN ALLEN, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 17-1197 (CKK) |
| | : | |
| DEPARTMENT OF JUSTICE, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

Isaac Kelvin Allen ("plaintiff") brings this action under the Freedom of Information Act

("FOIA"), *see* 5 U.S.C. § 552, against the Federal Bureau of Prisons ("BOP"), a component of

the U.S. Department of Justice. This matter is before the Court on plaintiff's Motion for

Reconsideration Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (ECF No. 33),

Defendant Bureau of Prisons' Renewed Motion for Summary Judgment (ECF No. 34),

Defendant Bureau of Prisons' Supplemental Renewed Motion for Summary Judgment (ECF No.

40), and plaintiff's Request for Court to Conduct an "In Camera" Review (ECF No. 45). For the

reasons discussed below, the Court will deny plaintiff's motions and will grant defendant's

motions for summary judgment.[1]

---

[1] The Court considered the following documents and their attachments/exhibits:
- Defendants' Motion to Dismiss and for Summary Judgment, ECF No. 19
- Opposition to Defendant's Motion to Dismiss and for Summary Judgment, ECF No. 27
- Memorandum of Points and Authorities in Reply to Plaintiff's Opposition to Defendants' Motion to Dismiss and for Summary Judgment, ECF No. 29
- Response to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss and/or Motion for Summary Judgment, ECF No. 32
- Plaintiff's Motion for Reconsideration Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure, ECF No. 33

## I. BACKGROUND

Isaac Kelvin Allen ("plaintiff") brought a habeas action in the United States District Court for the Eastern District of Texas. Opp'n to Defs.' Mot. to Dismiss and for Summ. J. (ECF No. 27, "Pl.'s Opp'n") ¶ 27; *see Allen v. Fox*, No. 1:13-cv-0296 (E.D. Tex. Mar. 19, 2018), *aff'd*, No. 18-40377 (5th Cir. June 13, 2019). In the course of those habeas proceedings plaintiff obtained several documents ("Texas Filing") among which was a four-page document dated April 29, 2011, titled Referral of Inmate Criminal Matter for Investigation ("Referral"). *See* Pl.'s Opp'n ¶ 27. Although BOP redacted certain information from the Referral, it disclosed a statement on the third page reading, "Inmate Allen has a Security Threat Group Assignment of Fraud." Mem. of P. & A. in Support of Def.'s Mot. for Summ. J., Decl. of Violet Mack (ECF No. 19-3, "First Mack Decl."), Attach. 1 at 7; Pl.'s Opp'n ¶ 28.

By letter dated November 30, 2016, plaintiff submitted a FOIA request to BOP (BOP FOIA No. 2017-01623) for "a copy of the BOP Program Statement on the criteria for placement in a Security Threat Group," as well as "all documents attributable to [plaintiff] being placed in a

- Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Reconsideration, ECF No. 36
- Defendant Bureau of Prisons' Renewed Motion for Summary Judgment, ECF No. 34
- Opposition to Defendant's Memorandum of Points and Authorities in Support of Defendant's Renewed Motion for Summary Judgment, ECF No. 37
- Reply to Plaintiff's Opposition to Defendant Bureau of Prisons' Renewed Motion for Summary Judgment, ECF No. 39
- Defendant Federal Bureau of Prisons' Supplemental Renewed Motion for Summary Judgment, ECF No. 40
- Errata, ECF No. 41
- Opposition to Memorandum of Points and Authorities in Support of Defendant's Supplemental Renewed Motion for Summary Judgment, ECF No. 43
- Reply to Plaintiff's Opposition to Defendant Bureau of Prisons' Supplemental Renewed Motion for Summary Judgment, ECF No. 44
- Request for Court to Conduct an "In Camera" Review, ECF No. 45

Security Threat Group." First Mack Decl., Attach. 1 at 1 (emphasis in original).[2] BOP staff searched plaintiff's central file and located 46 pages of responsive records in addition to his presentence investigation report ("PSR"). *Id.* ¶¶ 11-13, 16.

### A. Presentence Investigation Report

Citing a "BOP . . . policy of not allowing inmates in custody to possess their PSRs," *id.* ¶ 17, BOP refused to release a copy of plaintiff's PSR in response to his FOIA request, *id.* However, the declarant explained, an inmate may access and review his PSR upon request to his unit team, *id.*, in accordance with Program Statement 1351.05, Release of Information ("P.S. 1351.05").

### B. SENTRY Data

BOP released in full "6 pages from plaintiff's 'Inmate Discipline Data, Chronological Disciplinary Record' from the BOP's SENTRY Inmate Data System." Pl.'s Opp'n first ¶ 21[3]; *see* First Mack Decl. ¶ 13. "SENTRY . . . is the BOP's national on-line automated information system" which "operates several applications including but not limited to: Inmate Assignments, Sentence Computation, Administrative Remedy Program, Custody/Classification, and many other applications unrelated to" FOIA requests. First Mack Decl. ¶ 2.

### C. CTU Memo

BOP uses Security Threat Group ("STG") and Security Threat Profile ("STP") assignments to identify inmates who require enhanced monitoring. *See* Mem. of P. & A. in

---

[2] The Court has resolved plaintiff's FOIA claim against the Executive Office for United States Attorneys. *See* Memorandum Opinion and Order, *Allen v. Dep't of Justice*, No. 17-cv-1197 (D.D.C. Feb. 8, 2019) (ECF No. 31).

[3] Here, the Court refers to the first of two paragraphs designated by plaintiff as paragraph 21.

Reply to Pl.'s Opp'n to Defs.' Mot. to Dismiss and for Summ. J., Supp. Decl. of Violet Mack in Response to Pl.'s Opp'n to Def.'s Mot. to Dismiss and for Summ. J. (ECF No. 29-1, "Supp. Mack Decl.") ¶ 5; Mem. of P. & A. in Support of Def. Bureau of Prisons' Renewed Mot. for Summ. J., Second Supp. Decl. of Violet Mack (ECF No. 34-1, "2d Supp. Mack Decl.") ¶¶ 5-7. It appears that plaintiff already had two STG assignments when, on December 2, 2016, BOP's Counter Terrorism Unit ("CTU"), Supp. Mack Decl. ¶ 4, issued a memorandum ("CTU Memo") notifying BOP personnel that, "[b]ased on [plaintiff's] role in a fraudulent tax scheme, he [received a] Security Threat Profile assignment," Errata, Third Supp. Decl. of Violet Mack (ECF No. 41-2, "4th Supp. Mack Decl."), Attach. 1.[4]

Initially, BOP released a copy of the CTU Memo after having redacted identifying information about one inmate under Exemption 6, *see* Pl.'s Opp'n, Attach. 1, and plaintiff's STG/STG assignments under Exemption 7(E), *see* First Mack Decl. ¶ 16; Supp. Mack Decl. ¶¶ 4-5. Plaintiff demonstrated that he had obtained documents from the Texas Filing which disclosed the inmate's name. *See* Opp'n to Def.'s Mem. of P. & A. in Support of Def.'s Renewed Mot. for Summ. J. (ECF No. 37, "Pl.'s Renewed Opp'n") ¶¶ 13-16. For this reason, BOP provided a revised redacted copy of the CTU Memo which, consistent with the Texas Filing, disclosed the inmate's name. *See* 4th Supp. Mack Decl., Attach. 1. BOP maintained that Exemption 7(E) still applies to the STG/STP assignments themselves. *Id.* ¶ 11.

---

[4] References to BOP's supplemental renewed motion for summary judgment and supporting memorandum are to the Errata, ECF No. 41, which is paginated and includes a table of authorities. Defendant has submitted two declarations (ECF Nos. 36-1 and 41-2) the "Third Supplemental Declaration of Violet Mack," the Court designates the latter "4th Supp. Mack Decl."

D. Program Statement(s) Responsive to Plaintiff's FOIA Request

When the declarant initially made inquiries "on the criteria for placement in [an STG],"
First Mack Decl. ¶ 10, she learned that "BOP has a Program Statement on Security Threat
Groups[,]" *id.* BOP withheld this Program Statement in full, not under FOIA, but because it "is
for staff access only and is not available for release." *Id.*; *see id.*, Attach. 3 at 1. The declarant
neither identified the Program Statement by number nor obtained a copy of it. *See* 4th Supp.
Mack Decl. ¶ 6.

Subsequently, BOP invoked Exemption 7(E) as a basis for withholding this Program
Statement in full. First Mack Decl. ¶ 13 n.1; Supp. Mack Decl. ¶ 16. Although the declarant
still had not identified the Program Statement, she explained that it "details how the BOP
conducts internal law enforcement investigations in BOP facilities." Supp. Mack Decl. ¶ 16.
She further stated that its disclosure would "assist [plaintiff] and other inmates in circumventing
the law." *Id.* Nevertheless, BOP indicated that it would "allow [p]laintiff to review certain
portions of the Program Statement," *id.* ¶ 17, as "BOP ha[d] previously provided this redacted
version to inmates still in custody," 2d Supp. Mack Decl. ¶ 16.

Thereafter BOP allowed plaintiff access to a redacted version of Program Statement
1380.11, Special Investigative Supervisors Manual ("SIS Manual"). *See* 2d Supp. Mack Decl. ¶
11; *see generally id.*, Attach. 1. BOP's declarant considered the SIS Manual "responsive [to
plaintiff's FOIA request] because it contained information on the . . . monitoring of inmates'
automated activities (financial, telephone, correspondence), including inmate electronic
messages [which] are monitored to ensure inmates are not sending messages to continue criminal
activity." 4th Supp. Mack Decl. ¶ 5. According to plaintiff, the SIS Manual was not responsive

to his FOIA request because it made "absolutely <u>no</u> mention or reference to [an STP] or STG." Pl.'s Renewed Opp'n ¶ 10 (emphasis in original).

Plaintiff's reaction to the SIS Manual prompted the declarant to make additional inquiries. *See* 4th Supp. Mack Decl. ¶ 7. She learned about Program Statement 1380.09, <u>Security Threat Groups</u> ("P.S. 1380.09"), a Program Statement of which she previously had been unaware. *Id.* P.S. 1380.09 was "not listed on [BOP's] internal staff database or on the public website[.]" 4th Supp. Mack Decl. ¶ 7. BOP withheld P.S. 1380.09 in full under Exemptions 7(E) and 7(F). *Id.* ¶ 9. In addition, the declarant caused a supplemental search of BOP's TruIntel database for any documents pertaining to plaintiff's STG/STP assignment. *Id.* ¶ 14. This supplemental search yielded two documents, described below, which "had not been previously produced[] or accounted for in . . . prior declarations" regarding BOP FOIA No. 2017-01623. *Id.* ¶ 15.

E. SIS Report for SIS Case No. COM-I-11-0047

BOP's supplemental search yielded an eight-page Inmate Investigative Report prepared by Lt. D.C. DeCamilla for SIS Case No. COM-I-11-0047 ("SIS Report"). *Id.* ¶ 16. A redacted copy of the SIS Report had been released to plaintiff in response to BOP FOIA Request Number 2016-01713, which is the subject of a separate civil action in this court. *See id.*; Pl.'s Opp'n ¶¶ 30-31. BOP relied on Exemptions 6, 7(C), and 7(F) to withhold certain information pertaining to third parties, including the names and register numbers of two inmates involved in the investigation and mentioned in the report. *See* 4th Supp. Mack Decl. ¶¶ 17, 20, 22, 24. On plaintiff's showing that the Texas Filing included a copy of the SIS Report from which the inmates' names had not been withheld, *see* Opp'n to Mem. of P. & A. in Support of Def.'s Supp. Renewed Mot. for Summ. J. (ECF No. 43, "Pl.'s Supp. Opp'n") ¶ 7, BOP released a revised

redacted version of the SIS Report which, consistent with the Texas Filing, disclosed the inmates' names. *See* 4th Supp. Mack Decl. ¶ 17; *see id.*, Attach. 2 at 1.

### F. Disciplinary Reports

In addition, BOP's supplemental search yielded the disciplinary records of an inmate other than plaintiff. *Id.* ¶ 27. BOP withheld these records in full under Exemptions 6, 7(C), 7(E) and 7(F). *See generally id.* ¶¶ 27-34.

## II. DISCUSSION

### A. BOP's Renewed and Supplemental Renewed Summary Judgment Motions

#### 1. Summary Judgment Standard

This case, like a "vast majority" of FOIA cases, *Brayton v. Office of U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011), can be decided on summary judgment. Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the pleadings, disclosure materials on file, and affidavits "show[ ] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Judicial Watch v. Dep't of the Navy*, 25 F. Supp. 3d 131, 136 (D.D.C. 2014) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986)). The Court in a FOIA case may grant summary judgment on the basis of an agency's supporting affidavits or declarations, as long as they are "relatively detailed and non-conclusory." *SafeCard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C. Cir. 1991). If the agency withholds information, its declarations also must describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record [or] by evidence of agency bad

faith." *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). The Court conducts a *de novo* review of the record, and the agency bears the burden of proving its compliance with its obligations under the FOIA. 5 U.S.C. § 552(a)(4)(B); *see Military Audit Project*, 656 F.2d at 738.

### 2. BOP's Searches for Responsive Records

An agency "fulfills its obligations under FOIA if it can demonstrate beyond material doubt that its search was reasonably calculated to uncover all relevant documents." *Ancient Coin Collectors Guild v. U.S. Dep't of State*, 641 F.3d 504, 514 (D.C. Cir. 2011) (citations and internal quotation marks omitted). The Court may rely on an agency's "reasonably detailed [declarations], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 326 (D.C. Cir. 1999) (quoting *Oglesby v. U.S. Dep't of the Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)) (internal quotation marks omitted). Such declarations are "accorded a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs.*, 926 F.2d at 1200 (citation and internal quotation marks omitted). "If, however, the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (footnote and citations omitted).

At issue is BOP's supplemental search which yielded P.S. 1380.09, the SIS Report, and an inmate's disciplinary records. Plaintiff deems the supplemental search inadequate because it did not result in disclosure of "every single STG placed on [him], including the ones that have not yet been discussed." Pl.'s Renewed Opp'n ¶ 25. He demonstrates that he "has other STG

assignments besides the one listed in the [CTU Memo,]" and contends that "other STG assignments remain inside the BOP files" which BOP has not disclosed. *Id.* ¶ 27. For this reason, he argues that summary judgment on the adequacy of BOP's supplemental search is not warranted. *Id.* He also asks the Court to review in camera the responsive records for the purpose of verifying whether an "STG associates plaintiff to the 'Sovereign Citizen Movement.'" Request for Court to Conduct an "In Camera" Review (ECF No. 45, "Mot. for In Camera Review") ¶ 2 (emphasis removed).

Plaintiff misunderstands BOP's obligations under FOIA. "The issue is not whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate." *Perry v. Block*, 684 F.2d 121, 128 (D.C. Cir. 1982) (citing *Goland v. CIA*, 607 F.2d 339, 369 (D.C. Cir. 1978)). BOP does not run afoul of FOIA because its searches did not result in the discovery or release of particular information of interest to plaintiff. Nor does BOP violate FOIA by refusing to identify and verify each STG/STP BOP may have assigned plaintiff. FOIA does not require an agency to answer a requester's questions. *See DiViaio v. Kelley*, 571 F.2d 538, 542–43 (10th Cir. 1978) ("[I]t is clear that nothing in the [FOIA] requires 'answers to interrogatories' but rather and only disclosure of documentary matters which are not exempt."); *Powell v. IRS*, 255 F. Supp. 3d 33, 43 (D.D.C. 2017) (noting that "FOIA only requires that an agency turn over <u>records</u>, not that it provide a requestor with specific information or answer questions") (emphasis in original); *cf. Hall & Assocs. v. U.S. Envtl. Prot. Agency*, 83 F. Supp. 3d 92, 102 (D.D.C. 2015) (concluding that agency was not obligated to process a FOIA request which "could be construed as questions or interrogatory-like requests, asking [the agency] to agree or disagree with the various contentions of the [requester] under the guise of a FOIA request")

Plaintiff's second challenge to the supplemental search notes BOP's release of a redacted copy of the SIS Report without its four attachments. *See* Pl.'s Supp. Opp'n ¶¶ 6-9. As plaintiff well knows, BOP released redacted versions of the SIS Report and its attachments in response to BOP FOIA Request Number 2016-01713, the subject a separate civil action. *See generally* Memorandum Opinion and Order, *Allen v. Bureau of Prisons*, No. 16-CV-0708 (D.D.C. Feb. 8, 2019) (ECF No. 56). The Court need not revisit matters considered and resolved in another case about a different FOIA request.

BOP's searches were not perfect, but perfection is not the standard. *See Pinson v. Dep't of Justice*, 313 F. Supp. 3d 88, 108 (D.D.C. 2018) (citing *Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986)) ("The D.C. Circuit has held that FOIA does not require a perfect search, only an adequate one."). Based on the supporting declarations, the Court concludes that BOP's supplemental search was reasonable.

### 3. Presentence Investigation Report

Plaintiff demands release of his PSR and objects to BOP's refusal to do so in response to his FOIA request, noting his right to access the PSR pursuant to P.S. 1351.05. *See* Pl.'s Supp. Opp'n ¶ 1. In this Circuit, as long as an inmate is afforded a meaningful opportunity to review and take notes about his PSR, he has no recourse under FOIA for release of his PSR. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 625 (D.C. Cir. 2006) (per curiam); *Schotz v. Samuels*, 72 F. Supp. 3d 81, 89 (D.D.C. 2014) (finding "no improper withholding" of PSR which plaintiff "could access . . . by reviewing [it] in accordance with BOP policy"); *see also Delgado v. Bureau of Prisons*, No. 1:05-CV-401, 2007 WL 2471573, at *2 (E.D. Tex. Aug. 29, 2007) (concluding that complaint challenging P.S. 1351.05, which prohibits inmates from obtaining or possessing copies of their PSRs, failed to state a FOIA claim upon which relief can be granted,

as P.S. 1351.05 "affords a federal inmate the opportunity to review his PSR and to take notes on it"), *aff'd*, 278 F. App'x 367, 368 (5th Cir. 2008). BOP is not obligated to release plaintiff's PSR in response to his FOIA request. *See Showing Animals Respect & Kindness v. U.S. Dep't of Interior*, 730 F. Supp. 2d 180 (D.D.C. 2010); *Howell v. U.S. Dep't of Justice*, No. 04-CV-0479, 2006 WL 890674, at *2 (D.D.C. Apr. 4, 2006).

### 4. SIS Report

As stated above, BOP released a redacted copy of the SIS Report in response to BOP FOIA Request Number 2016-01713, the subject of a separate civil action. There, the Court concluded that BOP compiled the SIS Report for law enforcement purposes, and that it properly withheld information from the report and its attachments under Exemptions 7(C) (third party information), 7(E) (investigating and interviewing techniques), and 7(F) (identifying information about third parties involved in plaintiff's schemes and who cooperated with or were subjects of an SIS investigation of a tax fraud scheme). *See generally* Memorandum Opinion and Order, *Allen v. Fed. Bureau of Prisons*, No. 16-CV-708 (D.D.C. Feb. 8, 2019) (ECF No. 56). Even without the prior ruling, the Court would reach the same conclusion based on BOP's supporting declaration. *See* 4th Supp. Mack Decl. ¶¶ 18-26. The Court concludes that BOP properly redacted from the SIS Report third-party information under Exemptions 6 and 7(C) (names and register numbers of inmates involved in investigation and identifying information about other third parties), and 7(F) (identifying information about inmates and others who cooperated with investigation of identity theft and tax fraud scheme).

5. Disciplinary Reports

BOP withholds in full under Exemptions 6, 7(C), 7(E) and 7(F) disciplinary reports, *see* 4th Supp. Mack Decl. ¶ 27, "concern[ing] three separate incidents of misconduct" by an inmate other than plaintiff, *see id.* ¶ 28. The declarant states that these records were compiled for law enforcement purposes, *id.* ¶ 30, and describe the prohibited acts with which the inmate was charged, BOP staff who witnessed these acts, evidence supporting the disciplinary charges, the inmate's response to the charges, results of disciplinary proceedings, and sanctions imposed on the inmate, *see id.* ¶¶ 28, 30. Mentioned in these records are BOP staff members, other inmates, and civilian third parties. *See id.* ¶¶ 28, 30.

The declarant explains that release of the disciplinary records, which supported plaintiff's STG assignment, *id.* ¶ 34, not only "would constitute a clearly unwarranted invasion of the personal privacy of the subject inmate, BOP staff, other inmates and civilian third parties," *id.* ¶ 30, but also "could reasonably be expected to endanger the subject inmate," *id.* ¶ 34. Insofar as the records reflect BOP's investigation of each incident of misconduct, the records "contain[] information on the technique used to charge the inmate with having committed [each] prohibited act." *Id.* ¶ 32. Release of this information, the declarant states, "would disclose techniques and procedures for law enforcement investigations or prosecutions." *Id.* ¶ 31.

Plaintiff objects to these withholdings on the ground that the inmate's identity already has been disclosed. *See* Pl.'s Supp. Opp'n ¶¶ 10-12. He opines that Terrance Sills, whose name has been disclosed in the CTU Memo and the SIS report, is the subject inmate. *See id.* ¶¶ 13-14. But this speculation on plaintiff's part – disclosure of Sills' identity on other records does not establish conclusively that the disciplinary records at issue pertain to Sills. Furthermore, plaintiff's purported knowledge of the inmate's identity would not justify disclosure of

information regarding this inmate or any other third party mentioned in these records.  *See Carpenter v. Dep't of Justice*, 470 F.3d 434, 440 (1st Cir. 2006); *Master v. FBI*, 926 F. Supp. 193, 198-99 (D.D.C. 1996), *aff'd*, 124 F.3d 1309 (D.C. Cir. 1997) (Table).   Unless disclosure of third parties' names or identifying information about them in law enforcement records "is necessary in order to confirm or refute compelling evidence that the agency is engaged in illegal activity, such information is exempt from disclosure."  *SafeCard Servs.*, 926 F.2d at 1206.  Here, plaintiff does not demonstrate misconduct on BOP's part.

Plaintiff had an opportunity to challenge BOP's reliance on the claimed exemptions and did not do so.  Based on the Court's review of BOP's supporting declaration, *see* 4th Supp. Mack Decl. ¶¶ 18, 28-34, and absent any meaningful challenge by plaintiff, the Court concludes that BOP properly withheld in full the disciplinary records of another inmate under Exemptions 6, 7(C), 7(E) and 7(F).

### 6. SIS Manual

The BOP has redacted portions of the SIS Manual which "set forth in specific detail how BOP conducts internal law enforcement investigations in BOP facilities."  2d Supp. Mack Decl. ¶ 12.  Insofar as disclosure of this information "would allow inmates to circumvent investigations . . . by revealing how BOP collects information, . . . strategies in conducting these investigations, and how BOP prioritizes various issues associated with an internal investigation," *id.*, BOP invoked Exemption 7(E), *id.* ¶ 13.  In addition, BOP invoked Exemption 7(F), asserting that release of certain information in the SIS Manual could, for example, teach "inmates . . . how to evade detection in using the phone or mail to commit criminal acts such as drug introduction, murder for hire, [or] fraud . . . , which would make them feel more free to commit such criminal acts, some of which could endanger the lives of others.  *Id.* ¶ 15.  In such circumstances, the

declarant asserts, "there would be "fewer successful SIS investigations[] and fewer restraints on inmates who may seek to commit acts of violence[.]" *Id.*

Aside from declaring the SIS Manual unresponsive to his FOIA request, *see* Pl.'s Renewed Opp'n ¶¶ 9-10, plaintiff does not address either of the claimed exemptions. The Court presumes, then, that plaintiff does not demand the disclosure of any information withheld from the SIS Manual. *See Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 106 n.1 (D.D.C. 2017) ("Where the FOIA requester responds to the government's motion for summary judgment without taking issue with the government's decision to withhold or to redact specific documents, the Court can reasonably infer that the FOIA requester does not seek those specific records or information[.]"). Furthermore, on review of defendant's supporting declarations, the Court concludes that BOP properly redacted portions of the SIS Manual under Exemptions 7(E) and 7(F).

### 7. STG/STP Assignments and P.S. 1380.09

BOP invokes Exemption 7(E) to justify its decision to withhold plaintiff's STG/STP assignments from the CTU Memo. *See* Supp. Mack Decl. ¶¶ 4-5; Mem. of P. & A. in Opp'n to Pl.'s Mot. for Recons., Third Supp. Decl. of Violet Mack (ECF No. 36-1, "3d Supp. Mack Decl.") ¶ 7; 4th Supp. Mack Decl. ¶ 11. In addition, BOP relies on Exemptions 7(E) and 7(F) to withhold P.S. 1380.09 in full. *See* 4th Supp. Mack Decl. ¶ 9.

### a. Exemptions 7(E) and 7(F)

Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes," 5 U.S.C. § 552(b)(7), but only to the extent that disclosure of such records would cause an enumerated harm, *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). BOP

performs law enforcement functions, *see, e.g., Pinson v. U.S. Dep't of Justice*, 236 F. Supp. 3d 338, 365 (D.D.C. 2016), which involve the security and management of inmates in its custody, *see* 4th Supp. Mack Decl. ¶ 18. The declarant explains that STG "assignments are a tool used to monitor and track inmates who pose unique security threats, such as associations with gangs or terrorist organizations and sex offender status." First Mack Decl. ¶ 13 n.1. It follows that P.S. 1380.09 and the CTU Memo announcing plaintiff's third STG/STP assignment would have been compiled for law enforcement purposes.

### *i.* Exemption 7(E)

Exemption 7(E) protects information in records compiled for law enforcement purposes if its disclosure "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law[.]" 5 U.S.C. § 552(b)(7)(E). "The requirement that records 'would disclose techniques and procedures for law enforcement investigations or prosecutions' . . . is met, *inter alia*, where a record would disclose details about a law enforcement technique or procedure itself . . . or would disclose information regarding 'when . . . agencies are likely to employ' certain techniques or procedures[.]" *Sheridan v. U.S. Office of Personnel Mgmt.*, 278 F. Supp. 3d 11, 19 (D.D.C. 2017) (citing *Sack v. U.S. Dep't of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016) and *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011)). The final criterion poses a low bar for BOP. *See Sheridan*, 823 F. Supp. 3d at 19. "Rather than requiring the [agency] to prove a risk of circumvention, the statute exempts information that would be expected to risk circumvention of the law." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009) (internal quotation marks and citation omitted) (emphasis removed).

*ii.* Exemption 7(F)

Exemption 7(F) protects from disclosure information contained in law enforcement records that "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "[T]he phrase 'any individual' makes clear that Exemption 7(F) . . . shields the life or physical safety of *any* person, not only the law enforcement personnel[.]" *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 777 F.3d 518, 525 (D.C. Cir. 2015) (emphasis in original), *cert. denied*, 136 S. Ct. 876 (2016). No balancing of interests is required as would be the case under Exemption 7(C). *See Raulerson v. Ashcroft*, 271 F. Supp. 2d 17, 29 (D.D.C. 2002) ("Unlike Exemption 7(C), which involves a balancing of societal and individual privacy interests, [Exemption] 7(F) is an absolute ban against certain information[.]"). "In reviewing claims under [FOIA E]xemption 7(F), courts have inquired whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm." *Antonelli v. Fed. Bureau of Prisons*, 623 F. Supp. 2d 55, 58 (D.D.C. 2009) (citing *Albuquerque Pub. Co. v. DOJ*, 726 F. Supp. 851, 858 (D.D.C. 1989)). Within limits, the Court defers to the agency's assessment of danger. *See Gardels v. CIA*, 689 F.2d 1100, 1104-05 (D.C. Cir. 1982); *Garcia v. U.S. Dep't of Justice*, 181 F. Supp. 2d 356, 378 (S.D.N.Y. 2002) (quoting *Linn v. Dep't of Justice*, No. 92-CV-1406, 1995 WL 631847, at *9 (D.D.C. Aug. 22, 1995)) (additional citation omitted).

b. P.S. 1380.09, Security Threat Groups

The declarant describes P.S. 1380.09 as "restricted," such that a BOP employee must submit a request for a copy to the Intelligence and Counter Terrorism (ICT) Branch Administrator of the Correctional Programs Division with a letter of justification. 4th Supp.

Mack Decl. ¶ 8. P.S. 1380.09 is maintained in "a secure location at all times," *id.*, and "[i]f a copy is lost, the Warden must report in detail the circumstances of the loss to the Regional Correctional Services Administrator and the ICT Branch Administrator," *id.*

The declarant explains BOP's decision to withhold P.S. 1380.09 in full as follows:

> [P.S.] 1380.09 identifies the procedural requirements used to identify, validate, certify and document STG assignments and Security Threat Profiles and to provide guidance and instructions for entering the information into BOP's database TruIntel . . . .
>
> All information contained in . . . [P.S. 1380.09] identifies with specificity the techniques used to identify and monitor inmates who because of their associations (gangs, terrorist groups, etc.), or their prior or current conduct, require enhanced monitoring to effectively maintain the safety and security of the institution. Releasing any of the information contained within this PS will provide inmates the opportunity to circumvent [BOP's] monitoring procedures and processes, which in turn is likely to increase the potential for serious assaults, riots, homicides and other criminal activity, endangering both inmates and BOP staff members in prison facilities. Because of the opportunity for inmates to manipulate monitoring efforts and interfere with intelligence gathering techniques, they are not provided any information regarding an STG assignment, including generally whether they have *any* STG assignment.

*Id.* ¶¶ 8-9 (emphasis in original).

### c. Plaintiff's STG/STP Assignments

The declarant explains that, pursuant to 28 C.F.R. § 524.70, BOP "monitors and controls the transfer, temporary release and community activities of inmates who present special needs for management." 2d Supp. Mack Decl. ¶ 5. These are Central Inmate Monitoring (CIM) cases who "require a higher level of review . . . to protect staff, inmates and the general public, and to contribute to the safe and orderly operation of all federal institutions." *Id.*

"The BOP uses STG assignments to identify inmates in its custody and care who have the propensity to disrupt the safety and security of its institutions based on either the nature of their initial criminal conviction or violations of disciplinary infractions committed while incarcerated in BOP facilities." Supp. Mack Decl. ¶ 5. STG/STP assignments are not disclosed to inmates. 2d Supp. Mack Decl. ¶ 7. "An inmate's specific STG/STP assignment identifies [the] specific type of concern [the inmate poses] to the safety and security of the public, staff and inmates, and [the assignment] is used to manage placement of inmates in BOP facilities." *Id.* Disclosure of the STG/STP assignment itself "disclos[es] the techniques and procedures [BOP] use[s] to monitor inmates in [its] law enforcement capacity[.]" *Id.* ¶ 7. And release of an inmate's STG/STP assignment "would assist him in learning how BOP identifies such inmates and allow him to evade detection of future acts of disciplinary misconduct that would result in an STG assignment while in prison." Supp. Mack Decl. ¶ 6.

The declarant offers the example of an inmate with a "history of inappropriate contact with the civilian world" to whom BOP assigns an STG/STP. 2d Supp. Mack Decl. ¶ 7. Disclosure of the assignment "would reveal the nature of that inappropriate contact" as well as "BOP's technique and procedure used to identify the threat the inmate poses and how BOP will monitor him." *Id.* She further explains:

> BOP uses STG/STP assignments as part of its specific procedures for managing the inmate, including placement within BOP facilities.
>
> Because [STG/STP] assignments identify what types of information have been deemed relevant for monitoring, their disclosure would assist inmates in evading the monitoring techniques the BOP uses. For example, if an inmate knew he was subject to increased monitoring of his communication with civilians, he would use other methods to evade detection.

*Id.* ¶¶ 7-8. Based on information BOP has regarding plaintiff's STG/STP assignments reflected in the CTU Memo, it determined that disclosure of the assignment itself "would disclose

techniques and procedures that [p]laintiff or other inmates could reasonably be expected to use to circumvent the law." *Id.* ¶ 9.

### d. Plaintiff's Challenge to Withholdings Under Exemption 7(E)

Plaintiff knows that BOP assigned him "at least three different Security Threat Groups or Security Threat Profile[s.]" Pl.'s Supp. Opp'n ¶ 3; Mot. to Recons. ¶¶ 13-14. Two are "HISTORY OF FRAUD," effective March 2, 2009, AND "HISTORY OF MAIL ABUSE," effective March 3, 2011. *See* Mot. to Recons. ¶¶ 13-15; Pl.'s Renewed Opp'n ¶¶ 21-22. He argues that BOP cannot redact the STG/STP assignments from the CTU Memo because this information "is recorded in the public domain." Pl.'s Opp'n ¶ 28; *see* Mot. to Recons. ¶ 16.

The declarant concedes that BOP disclosed in error plaintiff's STG/STP assignments of FRAUD and for HISTORY OF MAIL ABUSE. This information "should have been redacted . . . before release [of the Texas Filing] to [p]laintiff." 3d Supp. Mack Decl. ¶ 6; *see* 4th Supp. Mack Decl. ¶ 13. She states that plaintiff's third STG/STP assignment, effective December 2, 2016, is different from the two assignments of which plaintiff already is aware. 3d Supp. Mack Decl. ¶ 7. "Plaintiff . . . cannot know whether the redacted information is the same or different" from the STGs for fraud and mail abuse. Supp. Mack Decl. ¶ 8. The STG/STP assignment withheld from the CTU Memo pertains to "acts committed after [plaintiff] was in prison," *id.* ¶ 10, and "does not involve the same STG assignment" disclosed in the Texas Filing, *id.* Thus, the declarant demonstrates that BOP need not disclose this third STG/STP assignment on the ground that it had entered the public domain.

Next, plaintiff argues that the name or title of an STG/STP is "not in [itself] a technique and procedure used in investigations and prosecutions." Pl.'s Renewed Opp'n ¶ 19. For example, he posits that the "HISTORY OF FRAUD does not give an indication of how or why

the BOP would, or could[,] make this determination about an inmate, or . . . say enough to avoid this designation." *Id*. ¶ 21. Similarly, he contends that simply knowing that he has an STG/STP for HISTORY OF MAIL ABUSE "does [not] inform an inmate "that he is suspected of circumventing the prison mail system." *Id*. ¶ 22. It may identify "the threat the inmate poses, [but] it does <u>not</u> reveal how the BOP will monitor the inmate[']s activities." *Id*. (emphasis in original). Therefore, he claims, disclosure of the STG/STP "does not reveal any procedures or techniques on monitoring inmate mail." *Id*. Plaintiff further contends that not all STG/STP assignments expose law enforcement techniques and procedures. Pl.'s Supp. Opp'n ¶ 17. He points to STG/STPs which associate inmates with prison gangs, *id*. ¶ 20, noting that such assignments would not disclose law enforcement techniques or procedures, *id*. ¶ 21.

Plaintiff's assertions are unsupported, however, and cannot overcome BOP's showing. Its declarations are sufficiently detailed and adequately demonstrate that disclosure of plaintiff's third STG/STP assignment would reveal "the techniques and procedures . . . use[d] to monitor inmates," 2d Supp. Mack Decl. ¶ 7, which "[p]laintiff or other inmates could reasonably be expected to use to circumvent the law," *id*. ¶ 9. BOP thus justifies its reliance on Exemption 7(E) to withhold plaintiff's STG/STP assignment from the CTU Memo.

The Court notes that plaintiff neither addresses Exemption 7(F) nor challenges BOP's decision to withhold P.S. 1380.09 in full. Based on BOP's supporting declaration, *see* 4th Supp. Mack. Decl. ¶¶ 7-9, the Court concludes that its reliance on Exemptions 7(E) and 7(F) is proper.

### 8. Segregability

"[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d

1, 18 (D.D.C. 2004) (quoting *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977)); 5 U.S.C. § 552(b). An agency must provide "a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (citation omitted). BOP meets its burden here. Its declarations adequately describe the information withheld and aver that all reasonably segregable material has been released. *See* 2d Supp. Mack Decl. ¶ 17; 4th Supp. Mack Decl. ¶ 36.

### B. Plaintiff's Motion for Reconsideration

The Court construes plaintiff's Motion for Reconsideration Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure (ECF No. 33, "Mot. to Recons."), as one under Rule 54(b), *see Cobell v. Norton*, 355 F. Supp. 2d 531, 539 (D.D.C. 2005), which "provides that an interlocutory order 'may be revised at any time before the entry of a [final] judgment,'" *FBME Bank Ltd. v. Mnuchin*, 249 F. Supp. 3d 215, 222 (D.D.C. 2017) (quoting Fed. R. Civ. P. 54(b)) (brackets in original), *appeal dismissed sub nom. FBME Ltd. v. Mnuchin*, 709 F. App'x 4 (D.C. Cir. 2017). Relief under Rule 54(b) is granted "as justice requires." *Singh v. George Washington Univ.*, 383 F. Supp. 2d 99, 101 (D.D.C. 2005) (citation omitted). "Justice may require revision when the Court has patently misunderstood a party, has made a decision outside the adversarial issues presented to the Court by the parties, has made an error not of reasoning but of apprehension, or where a controlling or significant change in the law or facts has occurred since the submission of the issue to the Court." *Id.* at 101 (citations, internal quotation marks, and brackets omitted). Plaintiff as the moving party "carries the burden of proving that some harm would accompany a denial of the motion to reconsider[.]" *In Defense of Animals v. Nat'l Insts. of Health*, 543 F.

Supp. 2d 70, 75 (D.D.C. 2008) (quoting *Cobell*, 355 F. Supp. 2d at 539). This plaintiff makes no such showing and thus fails to demonstrate that relief under Rule 54(b) is warranted.

Plaintiff seeks reconsideration of the Court's February 8, 2019 Memorandum Opinion and Order (ECF No. 31) granting in part and denying in part without prejudice defendant's first summary judgment motion (ECF No. 19). First, he faults the Court for allowing him to file a Surreply (ECF No. 32, Resp. to Def.'s Reply to Pl.'s Opp'n to Def.'s Mot. to Dismiss and/or Mot. for Summ. J.) while "completely ignoring" it. Mot. for Recons. ¶ 6. He "asks this Court to amend its order to include consideration of plaintiff's pro se arguments offered in his timely docketed surreply." *Id*. ¶ 7. Because the Court considered the arguments set forth in plaintiff's Surreply even if it did not mention or discuss them at length, plaintiff's motion to reconsider on this basis is denied.

Second, plaintiff purports to identify "newly discovered evidence," *id*. ¶ 8, namely information which had been released as part of the Texas Filing. The evidence to which plaintiff refers is the name of an inmate which BOP had redacted from the CTU Memo under Exemption 6. *See id*. ¶¶ 10-12; *see also id*., Attach. 1. The Court notes that BOP has released a revised redacted copy of the CTU Memo which discloses the inmate's name. *See* 4th Supp. Mack Decl. ¶¶ 10-11; *see also id*., Attach. 1.

Third, plaintiff asks that the Court amend its Memorandum Opinion and Order by directing BOP to release the STG it has withheld from the CTU Memo. *See* Mot. to Recons. ¶ 16. Plaintiff notes that BOP already has disclosed two STG/STP assignments, "FRAUD" and "HISTORY OF MAIL ABUSE," *see id*. ¶¶ 13-15, and asks that the Court "to order the BOP to release the information here," *id*. ¶ 16. The Court denies this request based on the assertion by BOP's declarant that the STG/STP assignment redacted from the CTU Memo is different from

the two STG/STP assignments inadvertently disclosed elsewhere.  *See* Supp. Mack Decl. ¶ 10; 3d Supp. Mack Decl.") ¶ 6.

## III. CONCLUSION

The Court concludes that BOP properly (1) denied plaintiff's FOIA request for release of his PSR; (2) withheld information from disciplinary reports pertaining to another inmate, the SIS Report, and from the SIS Manual under Exemptions 6, 7(C), 7(E) and 7(F); (3) withheld P.S. 1380.09 in full under Exemptions 7(E) and 7(F); and (4) withheld plaintiff's STG/STP assignments from the CTU Memo under Exemption 7(E).  Further, the Court concludes that BOP has released all reasonably segregable information, and that reconsideration of the February 8, 2019 Memorandum and Order is not warranted.  Accordingly, the Court grants BOP's renewed and supplemental renewed motions for summary judgment [ECF Nos. 34 & 40] and denies plaintiff's motions for reconsideration and for in camera review [ECF Nos. 33 & 45].  An Order is issued separately.

DATE: January 29, 2020                                    /s/
                                                         COLLEEN KOLLAR-KOTELLY
                                                         United States District Judge